UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BUSINESS INTEGRATION SERVICES, INC., :
 :
     Plaintiff, :
 :
-v- :
 : Index No. 06-CV-1863 (JGK) (MHD)
AT&T CORP., :
     Defendant. :
 :
 :
 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT AT&T CORP.'S MEMORANDUM
## IN OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE*

Robert D. Owen
Judith A. Archer
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York  10103-3198
(212) 318-3000
rowen@fulbright.com
jarcher@fulbright.com
*Attorneys for Defendant AT&T Corp.*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT .............................................................................................................. 3

I.     THE COURT SHOULD ALLOW AT&T TO PRESENT EVIDENCE
CONCERNING THE REASONS UNDERLYING ITS DECISION TO
TERMINATE PLAINTIFF'S ABN RESALES .................................................. 3

     A.     The Law of the Case Doctrine Does Not Apply ..................................... 3

     B.     BIS Should Not Be Permitted To Exclude Relevant Evidence Outside the
Scope of the Preclusion Order ................................................................ 5

     C.     AT&T Is Not Arguing Any Avoidance or Illegality Defense ............................ 10

     D.     The Information Sought To Be Excluded Is Relevant and Not Prejudicial
to BIS, but Exclusion of Such Evidence Would Be Prejudicial to AT&T .......... 11

II.    BIS MAY NOT ESCAPE THE LIMITATION OF LIABILITY PROVISIONS IN
THE ABN PURCHASE AGREEMENT ....................................................... 12

     A.     Section 9.1(iv) of the ABN Purchase Agreement Applies to BIS and
Limits Its Damages, If Any .................................................................... 12

     B.     Section 9.2 of the ABN Purchase Agreement Prohibits BIS's Claim for
Lost Profits ........................................................................................... 15

III.   EVIDENCE OF THE SEC CIVIL ENFORCEMENT PROCEEDING AGAINST
BIS OFFICERS PHONG AND CHANH NGUYEN IS ADMISSIBLE........................ 17

CONCLUSION ........................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. List Corp. v. U.S. News & World Report, Inc.*,
    75 N.Y.2d 38 (N.Y. 1989) ................................................................17

*Ashland Mgm't, Inc. v. Janien*,
    82 N.Y.2d 395 (1993) ......................................................................17

*In re Best Payphones, Inc.*,
    01-B-15472 (SMB), 2007 WL 1388103 (Bankr. S.D.N.Y. May 8, 2007) .......................16

*Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*,
    10 N.Y.3d 187 (2008) ......................................................................17

*Care Travel Company, Ltd. v. Pan American World Airways, Inc.*,
    944 F.2d 983 (2d Cir. 1991).............................................................17

*DiLaura v. Power Auth.*,
    982 F.2d 73 (2d Cir. 1992)............................................................5, 6

*Duane Reade v. 405 Lexington, L.L.C.*,
    122 A.D.3d 108, 800 N.Y.S.2d 664 (1st Dep't 2005) .....................................13

*Florence v. Merchants Cent. Alarm Co.*,
    51 N.Y.2d 793, 433 N.Y.S.2d 91 (1980) .................................................13

*J. Yanan & Assocs., Inc. v. Integrity Ins. Co.*,
    771 F.2d 1025 (7th Cir. 1985) ..........................................................20

*John Doe Co. v. United States*,
    350 F.3d 299 (2d Cir. 2003).............................................................6

*Kenford Co. v. County of Erie*,
    67 N.Y.2d 257 (1986) ......................................................................17

*Lamborn v. Dittmer*,
    873 F.2d 522 (2d Cir. 1989)...........................................................19

*Lewis v. Baker*,
    526 F.2d 470 (2d Cir. 1975).............................................................20

*Lugosch v. Congel*,
    Civ. No. 1:00-CV-0784 NAM/RFT, 2006 U.S. Dist. LEXIS 53116 (S.D.N.Y.
    Mar. 7, 2006).............................................................................6

# TABLE OF AUTHORITIES

(continued)

**Page (s)**

*National Market Share, Inc. v. Sterling National Bank*,
  392 F.3d 520 (2d Cir. 2004) ................................................................................11

*OneBeacon Ins. Co. v. Forman Int'l, Ltd.*,
  2006 U.S. Dist. LEXIS 90970 (S.D.N.Y. Dec. 13, 2006) ..................................6

*Orafan v. Goord*,
  No. 00-CV-2022 (LEK/RFT), 2003 U.S. Dist. LEXIS 14277 (N.D.N.Y. Aug. 11,
  2003) .....................................................................................................................4

*Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*,
  487 F.3d 89 (2d Cir. 2007) ...........................................................................15, 16

*United States v. Schwab*,
  886 F.2d 509 (2d Cir. 1989) ...............................................................................19

*United States v. Wolfson*,
  405 F.2d 779 (2d Cir. 1968) ...............................................................................20

*Vichare v. AMBAC Inc.*,
  106 F.3d 457 (2d Cir. 1996) ...............................................................................20

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
  956 F.2d 1245 (2d Cir. 1992) ...............................................................................5

*Westerbeke Corp. v. Daihatsu Motor Co.*,
  304 F.3d 200 (2d Cir. 2002) .................................................................................4

## RULES AND STATUTES

Fed. R. Civ. P. 8(c) .................................................................................................11

Fed. R. Evid. 403 ....................................................................................................21

Fed. R. Evid. 404 ....................................................................................................18

Fed. R. Evid. 608 ...............................................................................................18, 19

Fed. R. Evid. 609 ....................................................................................................19

Rule 10B-5 of the Securities Exchange Act of 1934 ..............................................18

## PRELIMINARY STATEMENT

***First Motion.***  Plaintiff's first motion *in limine* distorts prior discovery orders and improperly seeks to preclude AT&T from introducing *any* evidence concerning its reasons for ending an unorthodox selling initiative that Plaintiff had commenced without first satisfying traditional – and well known – AT&T approval and contracting requirements.[1]  Once the details of its selling initiative came fully to the attention of responsible officials within AT&T, the program was suspended and then formally terminated by AT&T.  Those responsible officials did consult with an in-house attorney and his concerns were in the mix (and his e-mail communications the subject of AT&T's unsuccessful claim of privilege), but his concerns were far from the only reason AT&T ended Plaintiff's program.  Although Plaintiff has had all of the attorney's e-mails for eight months, its motion seeks to prevent AT&T from introducing or even discussing any of them at trial.  And, distorting the Magistrate's previous Order beyond any recognition, Plaintiff's motion doesn't stop there:  Plaintiff seeks to prevent AT&T from adducing *any* evidence concerning *any* of the reasons AT&T's officials determined to end the selling program.  Plaintiff's motion is so broad it would prevent AT&T from discussing incidents that arose well *before* and *after* the attorney formulated and articulated his concerns.  Fundamental fairness cannot countenance such a limiting order, and it should not be granted.  Because Plaintiff has the relevant e-mails of AT&T's attorney, those should be part of the evidence heard by the jury.

Plaintiff argues that law of the case dictates the result it seeks, but the scope of the preclusion order at issue has never been litigated by the parties until now, and the Court has

---

[1]  AT&T's own Motion *in Limine* To Permit Defendant To Present Evidence Regarding Its Basis for Termination of Plaintiff's ABN Resales, filed August 24, 2009, ("AT&T Motion To Permit") contains the factual background and procedural history relevant to AT&T's opposition to this motion *in limine* by BIS.  AT&T respectfully requests that these motions be read in conjunction with each other as they are, essentially, cross-motions.

never ordered that AT&T cannot discuss reasons for termination that existed independently of the lawyer's counsel.  Plaintiff's argument that AT&T waived its right to contend the selling initiative was unorthodox misconstrues AT&T's position.  AT&T does not contend the selling program was illegal per se, only that it was unapproved by the proper AT&T officials and that for a complex host of reasons it was an unacceptable business practice.  The doctrine of waiver does not apply here, and there is no basis for the Court to declare that AT&T has somehow waived its right to put on a defense.  Finally, Plaintiff fails to make any showing that jury confusion will result if AT&T is permitted to tell the whole story of why it put a stop to Plaintiff's under-the-radar selling program.  Jury confusion is much more likely if they are not presented with the complete facts.

Plaintiff's motion is nothing more than an undisguised attempt to tie AT&T's hands from presenting any defense at all to BIS's newly concocted claim of breach of the covenant of good faith and fair dealing, which is not pled in its Complaint and was never raised before BIS submitted its proposed jury instructions.  (*See* Rec. Doc. No. 98, Plaintiff's Proposed Jury Instructions, Request No. 7.)  Because it is clear that Plaintiff intends to argue that AT&T had improper motives for terminating its selling program, the jury should hear the whole story and judge for itself.

***Second Motion.***  BIS is pressing alternative breach of contract claims based on either (i) the ABN Purchase Agreement as amended by an e-mail, or (ii) the e-mail standing alone.  But its second motion *in limine* would prevent AT&T from relying on either of two contractual limitation of liability clauses that are material terms of that same ABN Purchase Agreement.  This alone should result in denial of Plaintiff's Motion.  Moreover, contrary to Plaintiff's contentions that the language of both clauses is inapplicable as a matter of law to BIS, both apply

to the claims BIS is asserting in this case and serve to limit or entirely preclude BIS from any recovery even if it could prove liability on AT&T's part.  BIS provides no basis for the Court to disregard these unambiguous contractual provisions.  In any event, as the Court found in ruling on AT&T's summary judgment motion, there are disputed issues of fact as to whether the ABN Purchase Agreement governs Plaintiff's claims.  The Court found that those issues could not be decided on a summary judgment motion, and certainly should not be decided *in limine*.

**Third Motion.**  BIS also seeks to exclude evidence of the admission of liability of its CEO, Phong Nguyen, for insider trading and stipulation to an entry of judgment by the SEC and payment of civil penalties of approximately $500,000, as well as a similar SEC proceeding against its Vice President, Chanh Nguyen.  BIS contends that this evidence is irrelevant because it did not involve claims of fraudulent misrepresentations and omissions.  AT&T does not seek to use the evidence to impeach these witnesses solely with respect to their truthfulness.  The SEC proceeding involved conduct while Phong Nguyen was employed by AT&T, and in fact led to his forced resignation.  It was known by AT&T employees who later dealt with him at BIS and was, among other things, a reason why those employees were unwilling to allow BIS to continue with an inappropriate business model.  The evidence is proper and should be admitted.

## ARGUMENT

### I.  THE COURT SHOULD ALLOW AT&T TO PRESENT EVIDENCE CONCERNING THE REASONS UNDERLYING ITS DECISION TO TERMINATE PLAINTIFF'S ABN RESALES

#### A.  The Law of the Case Doctrine Does Not Apply

BIS contends that the law of the case doctrine bars AT&T from introducing any evidence of the reasons behind its decision to terminate BIS's ABN resales.  (Memorandum of Law of Plaintiff in Support of Plaintiff's Motions *In Limine* ("Pl. MIL") at 6-7.)  As demonstrated by

AT&T's own motion *in limine* seeking the Court's ruling on the scope of the Magistrate Judge's preclusion order, AT&T is neither attempting to introduce evidence in violation of the Magistrate Judge's preclusion order nor moving for reconsideration.   Instead, AT&T seeks through its motion to offer evidence of the reasons for terminating the ABN resales, and through its motion and this opposition to have the Court determine the proper scope of the preclusion order. Specifically, AT&T requests that this Court decide whether Magistrate Dolinger's order precluded introduction of the privileged documents and communications related thereto once the relevant documents were produced.  If this Court finds that the Magistrate Judge's preclusion order encompasses the privileged documents produced, AT&T further requests this Court to clarify the scope of the preclusion order.

Determinations concerning issues not previously decided, such as the scope of the Magistrate Judge's order and whether it intended to exclude reference to produced documents, fall outside the confines of the law of the case doctrine.  *See, e.g.*, *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 219 (2d Cir. 2002) (holding the law of the case doctrine inapplicable "where the pleadings and decision were directed toward another issue entirely" and thus not fully and fairly litigated); *Orafan v. Goord*, No. 00-CV-2022 (LEK/RFT), 2003 U.S. Dist. LEXIS 14277, at *15 (N.D.N.Y. Aug. 11, 2003) (holding that "[o]nly those questions actually decided become law of the case" and that the court "must decipher the nature of the prior ruling" to determine what was decided and is within the scope of the law of the case doctrine).

Magistrate Judge Dolinger addressed whether AT&T effected an at-issue waiver; he did not entertain briefing on, nor make a decision concerning, the preclusion of evidence relating to the privileged documents once produced.  Nor did the Magistrate Judge make clear the scope of the preclusion, certainly not as BIS now construes it.  Thus, the law of the case doctrine does not

preclude AT&T's arguments herein or its introduction of evidence not barred by the Magistrate Judge's preclusion order.[2]

**B.      BIS Should Not Be Permitted To Exclude Relevant Evidence Outside the Scope of the Preclusion Order**

1.      *Preclusion of Produced Documents Is Unnecessary and Unfair to AT&T*

AT&T seeks to introduce evidence to demonstrate that it terminated the ABN resales for proper business purposes and did not act in bad faith in doing so, and that AT&T's actions did not breach any contract.  The purpose of the Magistrate Judge's order was to avoid unfairness to BIS from AT&T's use of privileged information as a shield and a sword.  (*See* Declaration of Robert D. Owen in Support of AT&T Motion To Permit, dated August 24, 2009 ("Owen Decl. in Support") Ex. F at 3.)  That is, as BIS acknowledges, the Magistrate Judge sought to prevent AT&T from relying on counsel's advice to justify the termination of BIS's ABN sales while at the same time "shield[ing] AT&T's justification from scrutiny" by "bar[ring] BIS from examining the documents on [AT&T's] privileged document log."  (Pl. MIL at 2.)

The concerns raised in the Magistrate's order, and echoed by BIS in its motion, no longer exist, as the information BIS sought was produced more than eight months ago.  Indeed, AT&T has produced most of the privileged documents requested by BIS, and all of the privileged

---

[2]      In addition, "[t]he law of the case doctrine is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment."  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).  Grounds justifying reconsideration include:  (i) a change in the controlling law, (ii) the availability of new evidence, or (iii) the need to prevent manifest injustice or to correct a clear error.  *DiLaura v. Power Auth.*, 982 F.2d 73, 76 (2d Cir. 1992).  Should the Court determine that the law of the case doctrine covers the evidence that is the subject of the motions *in limine*, the Court should reconsider the Magistrate Judge's prior decision to prevent manifest injustice.  Plaintiff seeks to interpret the Magistrate Judge's order so expansively as to effectively prevent AT&T from raising any defense to any allegations of wrongdoing or unsubstantiated business reasons for the termination of Plaintiff's ABN resales.  It would be manifestly unjust to allow Plaintiff to wield both the shield and the sword, reversing exactly the prejudice the Magistrate Judge's order was designed to prevent.  Now that the privileged documents have been produced to Plaintiff, AT&T should be allowed to use those documents and assert the reasons behind its decision to disallow further resales to show that AT&T breached no contract and, if nothing else, to rebut any claim by BIS of bad faith or improper motive.

documents relevant to this issue -- far from the "discrete subset" that BIS claims.[3]   (AT&T

would be amenable to the Court's review *in camera* of the small number of privileged

documents requested by BIS but not produced to determine that BIS has received all pertinent

information.)

The at-issue waiver doctrine, based upon the fairness doctrine, serves to prevent an

adversary from "having to defend against the privilege holder's claim without access to pertinent

privileged materials that might refute the claim."   *John Doe Co. v. United States*, 350 F.3d 299,

304 (2d Cir. 2003).   In situations where, as here, the privilege holder has already disclosed the

documents at issue, the purpose behind the doctrine and the fairness issues are no longer at play.

*See, e.g.*, *Lugosch v. Congel*, Civ. No. 1:00-CV-0784 (NAM/RFT), 2006 U.S. Dist. LEXIS

53116, at *111 (S.D.N.Y. Mar. 7, 2006) (holding that an at-issue waiver did not occur in a

situation in which a party was not using privileged documents as a sword and a shield);

*OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, 2006 U.S. Dist. LEXIS 90970, at *31 (S.D.N.Y. Dec.

13, 2006) (holding that the fairness doctrine was not implicated because documents did not seem

to have been selectively withheld and because Plaintiff was "already being required to produce

the claims file").   This is exactly the case here.

> 2.   *BIS Should Not Be Allowed To Read the Preclusion Order Expansively so As To Exclude Relevant Evidence Wholly Unrelated to the AT&T Attorney Concerns*

Should the Court determine that the produced documents remain subject to preclusion,

many of the documents, deposition designations, and, presumably, testimony BIS seeks to

---

[3]      When BIS moved to compel production of AT&T's privileged documents, it provided the Court with a copy of AT&T's privilege log marked to indicate those documents it sought.   (Declaration of Judith A. Archer in Opposition to Plaintiff's Motions *in Limine*, dated September 2, 2009, ("Archer Opp. Decl.") Ex. B (Plaintiff's Mark-Up of Defendant's Privilege Log).)   BIS sought production of 109 documents on that privilege log.   (*Id.* Ex. B & ¶ 3.)   AT&T has produced 63 of the documents.   (*Id.* ¶ 3.)   Taking into account duplicates, only 20 independent documents were not produced.   (*Id.*)   None of those relate to AT&T counsel's legal concerns about BIS's ABN sales initiative.   (*Id.*)

exclude concern matters that are not and were never within the scope of the Magistrate Judge's preclusion order.  BIS does not specify which of AT&T's exhibits and documents it believes violate the order, but appears to be improperly using the Magistrate's order to seek to exclude any evidence that would be damaging to its case.  For example, BIS makes clear that it not only seeks to exclude evidence about "the legality of the ABN business model," but also "alleged improper marketing tactics," specifically (i) the improper use of AT&T's logo by a call center representative, (ii) AT&T's approval and then refusal to allow BIS to use third-party verification, and (iii) slamming allegations.  (Pl. MIL at 2, 7.)  These marketing practices are relevant to BIS's performance under the contracts and the reason AT&T ended the sales program – separate and apart from concerns expressed by counsel.  In fact, these marketing tactics were not the subject of the communications with AT&T counsel and are not properly excluded.

The improper use of AT&T's logo by a representative of a call center engaged by BIS involved sending faxes to potential customers without any reference to BIS and with BIS's address falsely labeled as AT&T.  (Archer Opp. Decl. Ex. C.)  That issue was first raised on March 24, 2004, (*id.*), after AT&T counsel expressed his concerns and AT&T instructed BIS to suspend its sales on February 18 and March 18 (*id.* Exs. D and E), but before formal notice was sent to BIS on May 25, 2004 (*id.* Ex. F).  It was reviewed and brought to the attention of AT&T's business people by AT&T's Corporate Security department, not AT&T's law department.  (*Id.* Ex. C.)  BIS confuses counsel's concern that BIS's use of AT&T's brand amounted to an improper license with the misrepresentations in the subsequent faxes.  BIS seeks to exclude that improper use not because it was the basis of AT&T's legal opinion—it was not[4]—but because it demonstrates BIS's improper conduct of the ABN sales initiative.

---

[4]     Counsel for AT&T had sent an e-mail two weeks before the logo issue arose expressing his concerns on March 10, 2004, and communications took place over the next two days.  (Archer Opp. Decl. Ex. G.)  Nowhere in

AT&T's alleged "refusal to allow BIS to use third-party verification" also was not the basis for the legal concerns of AT&T counsel.[5]   AT&T required BIS to provide a Letter of Authorization expressly indicating each customer's consent to switch to AT&T service, for the purpose of ensuring that no "slamming" occurred.   BIS was dissatisfied with AT&T's requirement, which took more time and would likely result in fewer customers switching service. BIS sought assistance from its contacts at AT&T to change the requirement (*Id.* Ex. H), which ultimately led to BIS's ABN resales coming to the attention of higher-level management at AT&T and AT&T's in-house counsel.   It did not, however, form the basis for counsel's concerns.   Indeed, it is not even mentioned in the communications from counsel.   (*Id.*)

Finally, the slamming concerns to which BIS refers arose after AT&T sent formal notice to terminate BIS's resales and was not one of the legal concerns expressed by counsel.   BIS did not even seek to compel documents on AT&T's privilege log that clearly refer to potential slamming complaints.   (*E.g.*, Archer Opp. Decl. Ex. B, Document ID Nos. E0000492, E0000496, E0000505, E0000511, E0000669, E0000674, E0000771, E0000774.)   This evidences BIS's own recognition that documents about slamming (which were dated in June 2004) did not form a basis for the legal concerns.   AT&T, of course, does not intend to introduce any of the documents on its privilege log that relate to slamming and were not produced.

BIS raises these issues as red herrings. The concerns expressed by AT&T counsel were not based on any of these improper marketing practices, and documents and testimony about such practices are not within the scope of the Magistrate Judge's order.   This is simply indicative

---

the counsel's communications is there any reference to the improper use of AT&T's logo later referred to in the March 24 e-mail.  (*Id.*)

[5]        "Slamming"' refers to the unauthorized change of a customer's service to a different telecommunications' carrier.   Third party verification, or "TPV," is the process by which a third party gets a customer's oral consent to switch carriers.   A letter of authorization, or "LOA," is a customer's written consent to switch.

of the breadth of the exclusion that BIS seeks.  There is nothing in the preclusion order to justify ruling *in limine* that evidence relating to any of these issues should be excluded.

Distorting the Magistrate Judge's order even further, on its proposed exhibit list BIS has indicated documents that it will seek to exclude that are wholly unrelated to the AT&T counsel's legal concerns.   For example, several of the documents listed on BIS's exhibit list as "conditional," which indicates the exhibits will only be introduced if BIS does not receive a ruling in its favor on its Motion, are dated prior to any involvement of AT&T's counsel as regards BIS.  (*See, e.g.*, Archer Opp. Decl. Ex. I (Plaintiff's Proposed Exhibit List), BIS exs. 160-165.)  These include documents in December of 2003 confirming BIS's intentional removal of its own name from marketing materials so that only AT&T's name would appear.  Several other conditional exhibits relate to the marketing practices discussed above and other issues having nothing to do with the legal concerns.  (*See, e.g.*, Archer Opp. Decl. Ex. G, BIS Proposed Ex. 237 (regarding LOAs); *id.* Ex. C (regarding improper fax), BIS Proposed Exs. 206 and 207; *id.* Ex. J, BIS Proposed Ex. 161 (regarding BIS's migration of sales from a prior ABN, resulting in write down of AT&T revenues); *id.* Ex. K, BIS Proposed Ex. 219 (regarding BIS's performance as agent); *id.* Ex. I, BIS Proposed Ex. 160 (the 2001 Addendum to Agency Agreement for AT&T Voice Services).)  BIS should not be granted wholesale exclusion of all documents based on the preclusion order simply because they paint BIS in a negative light. BIS's *in limine* motion is improper and should be denied.

> 3. *AT&T Should Not Be Precluded From Responding Should BIS Argue That AT&T Terminated the ABN Resales in Bad Faith or for Improper Business Reasons*

Finally, it is noteworthy that BIS has made no commitment not to claim that it would not seek to characterize AT&T's conduct as bad faith or to offer evidence that AT&T had an

undisclosed business reason for ending the ABN initiative.  Throughout this case and without any evidence to support it, BIS has argued that AT&T terminated BIS's ABN sales because, alternatively, its direct sales people were upset, its customers were upset, or AT&T regretted giving BIS a favorable rate.  In fact, BIS's proposed jury charge (which for the first time asserts a breach of covenant of good faith and fair dealing) makes clear that BIS now seeks to formally claim bad faith on AT&T's part.  (Rec. Doc. No. 98, Plaintiff's Proposed Jury Instructions, Request No. 7.)  BIS knows that its bad faith theory is refuted by the privileged documents that AT&T produced eight months ago.  BIS also should not be allowed to argue that AT&T terminated the ABN for a reason that is contradicted by the produced documents.  Should the Court grant BIS's motion, AT&T will be muzzled and unable to respond with the truth as to its actions.

## C.   AT&T Is Not Arguing Any Avoidance or Illegality Defense

BIS mischaracterizes AT&T's use of the evidence at issue in this Motion by claiming that AT&T's allegations relating to improper marketing practices "are clearly allegations of illegality or are attempts to assert an affirmative defense of avoidance of its obligations" that, in BIS's view, AT&T waived.  (Pl. MIL at 7-8.)  AT&T is not arguing, as Plaintiff suggests, that the contract is illegal per se.  Rather, AT&T only seeks to offer evidence that BIS's use of the ABN Purchase Agreement was not authorized and was an improper business practice.  AT&T should be permitted to show that it did not breach any contract with BIS and that it did not act improperly in terminating resales under the ABN Purchase Agreement.  Of course, it is BIS that has the burden of proving that AT&T breached a contractual obligation or that AT&T acted improperly; it is not AT&T's burden to show that its actions were proper.

Fed. R. Civ. P. 8(c) and the general waiver cases cited by BIS simply do not apply here. It is BIS's burden to prove each element of its claim, not AT&T's to prove that it did not breach the contract as an affirmative defense.   The Second Circuit has held that an assertion that a plaintiff cannot prove a necessary element of its claim is not an affirmative defense that needs to be pled in an answer pursuant to Rule 8(c).   *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 526-27 (2d Cir. 2004) (holding that an assertion that an intervening cause precluded the plaintiff's recovery, because causation is an element of a breach of contract claim, was not an affirmative defense that had to be pled).   Thus, AT&T has not waived anything with respect to its ability to show that it did not breach any contract.

### D.      The Information Sought To Be Excluded Is Relevant and Not Prejudicial to BIS, but Exclusion of Such Evidence Would Be Prejudicial to AT&T

BIS contends that AT&T's reliance on reasons for the termination of BIS's ABN resales would be confusing to the jury and prejudicial, and that its probative value does not outweigh such confusion or prejudice.   Again, BIS's intent to paint AT&T's termination as wrongful or based upon some undisclosed business reason should not allow it to exclude evidence that contradicts such theory.   It would be prejudicial to AT&T to not present the full facts to the jury as to why it instructed BIS to cease the resales of the ABN services, particularly in the face of BIS's clear intent to confuse the jury with unsupported speculation of improper business motives.[6]

For all of the above reasons, the Court should deny Plaintiff's Motion *in Limine* to exclude evidence relating to AT&T's legal concerns with BIS's resales under the ABN because the Magistrate Judge's preclusion order should not extend to privileged documents and

---

[6]      Contrary to BIS's hyperbole, AT&T has no intention of "offer[ing] evidence on alleged illegality under complex [FCC] and [PUC] regulations of fifty states."   (Pl. MIL at 6.)

communications produced to BIS.  Alternatively, the Court should order that the scope of the Magistrate Judge's order does not preclude AT&T from referring to the reasons AT&T terminated the ABN resales without stating that it relied upon legal advice or allow AT&T to introduce evidence of its reasons for terminating the ABN resales if BIS argues that such termination was for some business or other reason.  Further, AT&T requests that if this Court determines the preclusion order applies to any of the evidence AT&T seeks to introduce, that the Court review the individual documents and testimony BIS seeks to exclude to determine whether each is within the scope of the preclusion order.

## II.    BIS MAY NOT ESCAPE THE LIMITATION OF LIABILITY PROVISIONS IN THE ABN PURCHASE AGREEMENT

### A.    Section 9.1(iv) of the ABN Purchase Agreement Applies to BIS and Limits Its Damages, If Any

Section 9.1(iv) of the ABN Purchase Agreement is a limitation of liability clause that defines the limitation of "each party's liability" for claims arising, among other things, "in connection with any . . . obligations under this Agreement."  (Declaration of Shawn M. Perry, dated August 24, 2009, ("Perry Decl.") Ex. 3 at 4.)  BIS argues that the unambiguous liability cap in Section 9.1(iv) does not apply to BIS because the mathematical formula it uses to calculate the cap refers to "total net charges incurred by customer for the affected service," (Pl. MIL at 11), and, in BIS's view, this was not a service agreement contract.  But that is exactly what this is:  the ABN Purchase Agreement is an agreement under which BIS purchased services from AT&T.

Regardless, the language in section 9.1(iv) merely sets forth the formula for calculating the damages cap; it does not define whether the damages cap applies.  BIS suggests that because it used the ABN Purchase Agreement as a sales vehicle, it can pick and choose which contractual

provisions in that Agreement it wants to apply.  That claim is meritless and section 9.1(iv) of the

ABN Purchase Agreement, like all sections of that contract, applies to BIS's claims.  "It is

settled that a contractual provision which limits damages will be enforced," barring limited

circumstances not applicable here--such as public policy reasons.  *Duane Reade v. 405*

*Lexington, L.L.C.*, 122 A.D.3d 108, 800 N.Y.S.2d 664 (1st Dep't 2005).  Thus, in this

"commercial setting, where the language of the limitation is clear," BIS should not be relieved of

the provisions in the contract.  *Florence v. Merchants Cent. Alarm Co.*, 51 N.Y.2d 793, 433

N.Y.S.2d 91 (1980) (upholding limitation of liability provision in a commercial contract).

>    The unambiguous language of section 9.1(iv) provides:
>
>    "each party's liability shall be limited to proven direct damages not to exceed per
>    claim (or in the aggregate during any twelve (12) month period) an amount equal
>    to the ***total net charges incurred by customer for the affected service*** in the
>    relevant country during the three (3) months preceding the month in which the
>    damage occurred."

(Perry Decl. Ex. 3.)   Contrary to BIS's position, Section 9.1(iv) does not define the

circumstances in which it applies but merely sets forth the formula used for calculating the

damages cap.  It is the prefatory language of Section 9.1 that defines when the clause applies and

that language unambiguously specifies that it applies to "EITHER PARTY'S ENTIRE

LIABILITY AND THE OTHER PARTY'S EXCLUSIVE REMEDIES, FOR ANY DAMAGES

CAUSED BY ANY SERVICE DEFECT OR FAILURE OR FOR OTHER CLAIMS ARISING

IN   CONNECTION   WITH   ANY   SERVICE   OR   OBLIGATIONS   UNDER   THIS

AGREEMENT."

>    BIS argues that because its damage was for future lost profits resulting from AT&T's

termination of BIS's resales, somehow there were no "charges incurred" and no "services"

affected.  But, there need not be charges incurred or services affected for this limitation of

liability provision to apply.  All there needs to be is for the Plaintiff to be seeking a "remed[y] for . . . damages . . . for [a] claim[] arising in connection with any . . . obligation under this Agreement."  Here, BIS's breach of ABN Purchase Agreement claim falls squarely within the scope of this Section.  Section 9.1 and its subsections thus apply to BIS's claims.

Applying the mathematical formula set forth in Section 9.1(iv), any damages claimed by BIS shall be capped at (1) proven direct damages, (2) not to exceed, (3) total net charges incurred by the customer (BIS) for the affected service, (4) during the three months before the claimed damage.  Thus, if BIS proves that it suffered direct damages, it may only receive damages up to the amount it incurred for the services it ordered under the Agreement for the 3 month period before the claimed damage.

In any event, BIS's argument that it was not receiving services from AT&T under the ABN Purchase Agreement is disingenuous, at best, especially in light of BIS's admission that the ABN Purchase Agreement said *nothing* about how BIS intended to use the services it purchased from AT&T.  BIS ordered long distance services under the ABN Purchase Agreement, beginning in December 2003 through March 2004.  BIS has admitted that it was responsible for those services.  The fact that other customers used those services is irrelevant to BIS's obligation to AT&T under the ABN Purchase Agreement.  Any direct damages it suffered, therefore, are limited to the charges it incurred during that time period for long distances services.  There is no basis to its claim that the Court may disregard section 9.1(iv), certainly not before trial.  To the contrary, the Court could, on the express language of section 9.1(iv) alone, enforce that section to limit BIS's damages to the amount specified thereunder, which BIS would then have to prove at trial.

**B.** **Section 9.2 of the ABN Purchase Agreement Prohibits BIS's Claim for Lost Profits**

Despite its expert's admission that its damages claim is entirely a claim for lost profits, BIS also seeks to have the Court disregard section 9.2, which prohibits recovery for "damages for lost profits . . . of any kind."[7]  Claiming that the damages it seeks are direct, not consequential damages, BIS contends that section 9.2 does not apply to its claim.  BIS claims that section 9.2 only prohibits lost profits that are consequential damages, because it uses the phrase "including" before the lost profits reference.  But the actual language in section 9.2 is broad and does not preclude liability for only one type of lost profits.  Instead, it expressly and unambiguously precludes liability for lost profits *of any kind*.  BIS's attempt to avoid the effect of this provision by recasting its claim for lost profits as direct damages is negated by the express language of the agreement.[8]

Without any citation to legal authority (because there is none), BIS has created its own rule:  if the lost profits sought come from the contracting party rather than a third party, the damages are direct, not consequential.  (Pl. MIL at 13.)  The appropriate distinction is that between a definite obligation flowing directly from the provisions of a contract as opposed to a non-definite, contingent obligation as exists here.  BIS's reliance on *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89 (2d Cir. 2007), is misplaced.  *Tractebel* is very different from the instant case, and does not support BIS's position that its lost profits are direct damages outside the scope of section 9.2.  The contract there included a

---

[7]      BIS also tries to bolster its argument by reference to the limitation of liability provision in the Agency Agreement and argues that the Court should rule *in limine* that that provision does not apply, (Pl. MIL at 14 n.6), but there is no need for the Court to even address the Agency Agreement since BIS withdrew with prejudice any claim it has arising out of the Agency Agreement.

[8]      BIS's attempt to derive support from its expert's reference to "direct damages" in his report is of no moment.  (Pl. MIL at 14.)  It is the Court's determination that counts, not the self-serving characterization by BIS's paid expert.

termination payment provision, setting forth a formula to determine losses recoverable by the non-breaching party. *See id.* at 108 n.19. Because the case involved anticipatory breach, the damage calculation necessarily was a projection of potential future profit based on the formula in the contract. The court recognized that because defendant sought "only to recover money that the breaching party agreed to pay under the contract, the damages sought [were] general damages," particularly because the damages were "precisely what the non-breaching party bargained for." *Id.* at 109-10. Although *Tractebel* involved projecting damages into the future, it did not involve third party contingencies that would determine whether damages occurred at all.

Because the damages sought by BIS do not flow from the express terms of the agreement, but are contingent on outside factors – sales to third parties of AT&T's ABN service – the damages sought are indirect lost profits, not general damages as BIS asserts. *See In re Best Payphones, Inc.*, 01-B-15472 (SMB), 2007 WL 1388103, at *9 (Bankr. S.D.N.Y. May 8, 2007) (because agreement at issue did not require Debtor to pay specified sum, but rather fees based on the number of payphones and their usage, creditor's claim "to recover the benefits of that future performance minus the expenses saved . . . [are] for lost profits, the quintessential form of consequential or special damages."). If BIS were to claim that AT&T had not paid it for sales of ABN service that it actually had made prior to termination, those arguably could be direct lost profit damages. BIS is not claiming such damages. Instead, BIS seeks damages for sales and profits that it projects it might have made had AT&T permitted it to continue to resell ABN services to third parties. Such damages do not flow directly because they may not occur.

In *Care Travel Company, Ltd. v. Pan American World Airways, Inc.*, 944 F.2d 983 (2d Cir. 1991), plaintiff sought damages for sales it could have made absent defendant's breach. *Id.*

at 994-95.  The parties in *Care Travel* had an agreement to pay commissions based on sales made to third parties.  *Id.*  Care Travel involved lost profits damages to be paid by defendant directly.  The court, however, properly addressed the claimed damages under the well-known test for indirect lost profits set forth in *Kenford Co. v. County of Erie*, 67 N.Y.2d 257 (1986).  *Care Travel*, 944 F.2d at 994.  Here, BIS seeks recourse for profits it claims it could have made absent the breach.  Because the parties did not agree upon either an amount of damage or a formula for determining damages that is not contingent, the lost profits sought do not flow directly from the contract, and are, therefore, indirect and barred by section 9.2.

Stating dismissively that "some courts applying New York law have assumed or suggested that claiming lost profits are always consequential damages," BIS asks the Court to ignore a long line of cases decided by the New York Court of Appeals which make no distinction between lost profits recoverable as general or consequential damages.  *See, e.g.*, *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187 (2008); *Ashland Mgm't, Inc. v. Janien*, 82 N.Y.2d 395 (1993); *Am. List Corp. v. U.S. News & World Report, Inc.*, 75 N.Y.2d 38, 43 (N.Y. 1989).  The New York Court of Appeals routinely – in these cases and others – treats claims for lost profits the same, without distinguishing between lost profits as direct or consequential damages.

## III.   EVIDENCE OF THE SEC CIVIL ENFORCEMENT PROCEEDING AGAINST BIS OFFICERS PHONG AND CHANH NGUYEN IS ADMISSIBLE

Phong Nguyen, the CEO of BIS, is a former employee of AT&T who was forced to resign from AT&T in 2000 as a result of an SEC civil enforcement proceeding against him charging insider trading with respect to certain stock purchases.  (Archer Opp. Decl. Ex. A (Excerpts of the Deposition of Phong Nguyen and exhibit 51 thereto) at 25:24-33:24.)  Chanh Nguyen, the president of BIS, was also a defendant in that SEC civil enforcement proceeding.

(*Id.*)  The proceeding involved stock purchases in a company known as Intelefilm, a customer of AT&T with whom Phong Nguyen worked in his capacity as an AT&T employee and Chanh Nguyen worked while at BIS.  (*Id.*)  The proceeding resulted in consent judgments against both Phong and Chanh Nguyen to permanent injunctive relief against violating Section 10(b) and Rule 10B-5 of the Securities Exchange Act of 1934, and disgorgement of ill-gotten profits and civil penalties.  (*Id.*)  Phong Nguyen paid over $550,000, including over $371,000 in civil penalties.  (*Id.*)  Chanh Nguyen paid over $32,000, including $14,000 in civil penalties.  (*Id.*)  BIS argues that evidence is inadmissible pursuant to Federal Rules of Evidence 404 and 608.  (Pl. MIL at 16.)  AT&T is not seeking to use the evidence of the SEC proceedings improperly to prove "conformity therewith," which is prohibited by Rule 404(b), nor is AT&T seeking to prove Chanh or Phong Nguyen's character for truthfulness with extrinsic evidence.   There is no legitimate basis to prevent AT&T from introducing evidence concerning the SEC proceeding and its results.

Rule 404(b) allows the introduction of evidence of wrongdoing to show motive, opportunity, intent, preparation, or knowledge, among other things.  Fed. R. Evid. 404(b).  The SEC civil enforcement proceeding involved insider trading charges with respect to a customer of AT&T that Phong Nguyen was working with, was the reason for Phong Nguyen's forced resignation from AT&T, and was a factor AT&T considered in assessing whether to allow BIS to continue to use the ABN Purchase Agreement to resell services.  (Archer Opp. Decl. Ex. A.)  Thus, AT&T's knowledge of the enforcement proceeding against the primary officers of BIS informed its decision to terminate resales by BIS.  AT&T is not seeking to introduce the evidence to prove that Phong and Chanh Nguyen acted in conformity with this prior act, but to

show how AT&T's relationship with and perception of Phong and Chanh Nguyen was influenced by the SEC proceeding and conduct that led to it.

Further, Fed. R. Evid. 608 does not bar AT&T from using the prior enforcement proceeding on cross-examination of Phong and Chanh Nguyen.  Rule 608(b) states in relevant part that

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Fed. R. Evid. 608.

Rule 608's general prohibition on the use of extrinsic evidence applies only when such *extrinsic* evidence is being used solely to challenge the witness' character for untruthfulness.  *See Lamborn v. Dittmer*, 873 F.2d 522, 528 (2d Cir. 1989) (holding that Rule 608 is "inapplicable in determining the admissibility of evidence introduced to impeach a witness's testimony as to a material issue"); *United States v. Schwab*, 886 F.2d 509, 511 (2d Cir. 1989) (holding that prior acts of misconduct are not limited by Rule 608(b) when offered to show bias).  AT&T would not seek to use evidence of the SEC civil enforcement proceeding only to challenge the witnesses' character for truthfulness.  Rather, it explains Phong Nguyen's departure from AT&T, and in part forms the basis for a material issue in the case, *i.e.*, AT&T's decision to terminate the ABN resales.

The Court is "accorded great discretion in [its] assessment of the matters which should properly be raised on cross-examination as bearing on the credibility of a party or witness." *Lewis v. Baker*, 526 F.2d 470, 475 (2d Cir. 1975) (affirming a verdict in part because the trial judge properly allowed questions regarding one party's inclusion of an untruthful statement on an employment application); *see also Vichare v. AMBAC Inc.*, 106 F.3d 457, 468 (2d Cir. 1996) (noting that the "ordinary rule . . . allows specific acts of a witness to be inquired into on cross-examination if, within the discretion of the trial court, they are deemed probative of untruthfulness").

Questions regarding a consent order or a consent decree entered against a witness is evaluated in the same way as any other evidence of prior bad acts.  Thus, "[a]s impeachment evidence, the consent decree is something the witness may be questioned about on cross-examination." *J. Yanan & Assocs., Inc. v. Integrity Ins. Co.*, 771 F.2d 1025, 1031 (7th Cir. 1985) (holding that the trial judge acted appropriately in allowing cross-examination regarding a consent decree).  The nature of insider trading is probative of untruthfulness because of its similarity to fraud, deceit, and dishonesty.

In addition, if BIS submits any evidence concerning Phong or Chanh Nguyen's reputation, then AT&T should be allowed to "pursue the inquiry with contradictory witnesses to show that damaging rumors, whether or not well-grounded, were afloat."  *United States v. Wolfson*, 405 F.2d 779, 786 (2d Cir. 1968) (holding that questions regarding a consent decree entered into by the defendant were appropriately asked of a character witness for the defendant).  As noted, insider trading is probative of a witness's truthfulness and questions on cross-examination regarding the civil enforcement proceeding should not be barred.

Finally, the evidence should not be excluded pursuant to Rule 403. The prior proceeding informed AT&T's interactions with BIS, its perception of its principal, and its decision to terminate the resales. Because it is essential to the jury's understanding of the relationship between AT&T and BIS and the ultimate termination that forms the basis of BIS's claim, the probative value of the evidence far outweighs the prejudice to BIS.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiff's Motions *in Limine* in their entirety.

Dated: September 2, 2009
    New York, New York

                Respectfully submitted,

                By:   /s/ Judith A. Archer
                     Robert D. Owen
                     Judith A. Archer

                FULBRIGHT & JAWORSKI L.L.P.
                666 Fifth Avenue
                New York, New York  10103-3198
                (212) 318-3000
                rowen@fulbright.com
                jarcher@fulbright.com

                *Attorneys for Defendant AT&T Corp.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was served by electronic mail through ECF, on September 2, 2009, upon:

Shawn M. Perry
Perry & Perry, PLLP
Suite 279, Parkdale 1
5401 Gamble Drive
Minneapolis, Minnesota 55416
(952) 546-3555
shawn.perry@pppllp.com

-and-

Michael Einbinder
Einbinder & Dunn, LLP
104 West 40th Street
20th Floor
New York, NY 10018
(212) 391-9500
me@ed-lawfirm.com

_____/s/ Judith A. Archer_____
                Judith A. Archer